UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  STEPHEN SPELLMAN,

                    Plaintiff,          **MEMORANDUM & ORDER**
                                          20-CV-5962(EK)

                -against-

  KILOLO KIJAKAZI,

                    Defendant.[1]

-------------------------------------x
ERIC KOMITEE, United States District Judge:

        Plaintiff Stephen Spellman challenges the Social

Security Administration's denial of his claim for disability

insurance benefits.  Before the Court are the parties' cross-

motions for judgment on the pleadings.  For the following

reasons, I deny the Commissioner's motion and grant Spellman's

motion to the extent it seeks reversal of the Commissioner's

final decision.  Rather than remanding for a calculation of

benefits as Spellman seeks, however, I remand for further

proceedings, though I impose time limitations given the lengthy

history of Spellman's quest for disability benefits.

_____

        [1] Kilolo Kijakazi became the Acting Commissioner of Social Security on
July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure, Kilolo Kijakazi is substituted for Andrew Saul, former
Commissioner of Social Security, as the Defendant in this suit.  *See* 42
U.S.C. § 405(g).  The Clerk of Court is respectfully directed to update the
caption accordingly.

## I.  Background

### A.  Procedural Background

In February 2014, Spellman applied for disability benefits, alleging a disability onset date of February 25, 2010. Administrative Tr. ("Tr.") 12, ECF No. 8.  The administrative law judge ("ALJ"), Dina Loewy, concluded that Spellman was not disabled and therefore not entitled to disability benefits.  *Id.* at 22.  The Appeals Council denied Spellman's request for review.  *Id.* at 1.  Spellman sought review of the agency's decision in this Court, and in June 2018, the Honorable Pamela K. Chen remanded the case to the agency for further proceedings on the basis that the ALJ had improperly evaluated Spellman's subjective reports of his symptoms, including his complaints of shoulder and back pain.  *Spellman v. Berryhill*, No. 17-CV-3189, 2018 WL 2849691, at *1–2 (E.D.N.Y. June 11, 2018).

Pursuant to Judge Chen's remand order, on August 15, 2019, ALJ Loewy held a second hearing on Spellman's claim.  Tr. 428; *see id.* at 449–75.  In December 2019, the ALJ again concluded that Spellman was not disabled and therefore not entitled to disability benefits.  *Id.* at 441.  Spellman again requested review of the ALJ's decision, which the Appeals Council denied, rendering that decision final.  *Id.* at 419–20. Spellman timely sought review of that decision in this Court.

**B.    The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i), (b).  If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" his "physical or mental ability to do basic work activities."  *Id.* § 404.1520(a)(4)(ii), (c).  If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments").  *Id.* § 404.1520(a)(4)(iii), (d); 20 C.F.R. pt. 404, subpt. P, app. 1.  If it does, the ALJ will deem the applicant disabled.  *Id.* § 404.1520(a)(4)(iii).

On remand here, the ALJ determined that Spellman had not engaged in substantial gainful activity since his alleged

onset date.  Tr. 431.  The ALJ also determined that Spellman
suffered from the "severe impairments" of degenerative disc
disease; degenerative joint disease; and "status post right
shoulder surgery."  *Id.*[2]  However, the ALJ also determined that
none of these severe impairments rose to the level of a Listed
Impairment.  *Id.* at 432.

When the ALJ finds that the claimant's severe
impairments do not meet the requirements of a Listed Impairment,
she must determine the claimant's residual functional capacity
("RFC"), which is the most a claimant can do in a work setting
notwithstanding his limitations.  20 C.F.R. § 404.1545(a)(1).
The ALJ concluded here that Spellman had the RFC to perform
"sedentary work" with limitations.  Tr. 433.  Those limitations
included that Spellman could "frequently" reach, but could
"never reach overhead, or push or pull with the right upper
extremity."  *Id.*

At step four, the ALJ considers whether, in light of
the RFC determination, the claimant can perform "past relevant
work."  20 C.F.R. § 404.1520(a)(4)(iv), (f).  Here, the ALJ
found that Spellman could not perform his past work as a

---

[2] The ALJ did not explain what she meant by "status post right shoulder
surgery."  However, that language appears in a report by Dr. Perry Drucker,
who (as discussed below) was Spellman's treating physiatrist.  *Id.* at 350.
In the context of that report, it appears that this phrase refers to Spellman
having been recovering from shoulder surgery.

firefighter.  Tr. 439.  At step five, the ALJ evaluates whether
the claimant could perform jobs existing in significant numbers
in the national economy.  20 C.F.R. § 404.1520(a)(4)(v), (g).
The ALJ determined that Spellman could perform such jobs,
including as a "telephone quotation clerk," a "call out
operator," and a "charge account clerk."  Tr. 440–41.[3]  Given
that conclusion, the ALJ concluded that Spellman was not
disabled.  *Id.* at 441.

## II.  Standard of Review

A district court has jurisdiction to review the
Commissioner's final judgment denying an application for
disability benefits.  42 U.S.C. § 405(g).  The review is limited
to two questions: whether substantial evidence supports the
Commissioner's decision, and whether the Commissioner applied

---

[3] A "telephone quotation clerk" "[a]nswers telephone calls from
customers requesting current stock quotations and provides information posted
on [an] electronic quote board," and "[m]ay call customers to inform them of
stock quotations."  *237.367-046 Telephone Quotation Clerk*, *Dictionary of
Occupational Titles* (4th ed. 1991), 1991 WL 672194.  A "call-out operator"
"[c]ompiles credit information, such as status of credit accounts, personal
references, and bank accounts to fulfill subscribers' requests, using
telephone," "[c]opies information onto form to update information for credit
record on file, or for computer input," and "[t]elephones subscriber to relay
requested information or submits data obtained for typewritten report to
subscriber."  *237.367-014 Call-Out Operator*, *Dictionary of Occupational
Titles*, *supra*, 1991 WL 672186.  A "charge-account clerk" "[i]nterviews
customers applying for charge accounts" and "[m]ay check references by phone
or form letter and notify customer of acceptance or rejection of credit."
*205.367-014 Charge-Account Clerk*, *Dictionary of Occupational Titles*, *supra*,
1991 WL 671715.

the correct legal standards.  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[4]

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive."  42 U.S.C. § 405(g).

### III.  Discussion

Spellman raises three arguments in this appeal.  Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 15–24, ECF No. 11.  First, he argues that the ALJ violated the "treating physician rule" in according the opinion of Spellman's treating physiatrist only "some weight" rather than controlling weight.  Second, he asserts that the ALJ failed to provide legally sufficient reasons for rejecting his subjective statements about the severity of his impairments.  Third, he contends that the ALJ failed to identify and reconcile a conflict between the testimony of the vocational expert and the *Selected Characteristics of Occupations*.  For the following reasons, I credit each of Spellman's arguments.

---

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

**A.    Treating Physicians' Opinions**

Spellman first argues that ALJ Loewy violated the treating physician rule by failing to justify the limited weight she accorded the opinion of his treating physician, Dr. Perry Drucker, who is a specialist in physical medicine and rehabilitation.  Pl. Mem. 15–20.

Dr. Drucker began seeing Spellman in 2013.  Tr. 350. At the time, Spellman was recovering from a number of surgeries, including of his shoulder, arm, and hip.  *Id.*  These surgeries became necessary after Spellman, then a New York City firefighter, fell through a roof while fighting a fire in 2008. *Id.*  Spellman continued to see Drucker between 2013 and 2015. *Id.* at 350–54.  In a December 2015 report, Drucker diagnosed Spellman with left foraminal disc herniation with annular tear; L4/L5 region with bilateral lumbosacral radiculopathy; C5-C6 and C4-C5 disc herniation with concomitant right-handed cervical radiculopathy; and left shoulder rotator cuff tendinosis.  *Id.* at 355.  Drucker also noted that Spellman suffered from residual weakness and decreased range of motion as a result of his multiple surgeries.  *Id.*

Based on these diagnoses and his treatment of Spellman, Drucker opined that Spellman could walk, stand, or sit for less than four hours in an eight-hour day; could lift or carry fewer than 10 pounds for up to two-thirds of a workday;

and would require a "sit-stand option" and frequent breaks throughout the workday. *Id.* at 348-49. Drucker also indicated that Spellman required certain medications that would interfere with his ability to function and to concentrate on his work. *Id.* at 349.

Because Spellman filed his claim before March 27, 2017, the treating physician rule applies. *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 F. App'x 34, 35 (2d Cir. 2017). Under this rule, an ALJ must give a treating physician's opinion "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96-5p, 61 Fed. Reg. 34,471, 34,474 (July 2, 1996) ("[T]he adjudicator must . . . adopt in [the overall RFC] assessment any treating source medical opinion (i.e., opinion on the nature and severity of the individual's impairment(s)) to which the adjudicator has given controlling weight").

Nevertheless, an ALJ may discount a treating physician's opinion when it is conclusory or "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). In doing so, an ALJ must consider,

among other things, "the length of the treatment relationship
and the frequency of examination; . . . the relevant evidence,
particularly medical signs and laboratory findings, supporting
the opinion; the consistency of the opinion with the record as a
whole; and whether the physician is a specialist in the area
covering the particular medical issues." *Burgess*, 537 F.3d at
129.  The ALJ need not undertake a "slavish recitation of each
and every factor," however, where her "reasoning and adherence
to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x
67, 70 (2d Cir. 2013).

          The ALJ credited Drucker's opinion in part.  Tr. 438–
39.  She agreed that Spellman could perform only sedentary work
and would need to change positions at his workstation.  *Id.* at
438.  She also agreed with Drucker's apparent decision not to
include any limitations on Spellman's ability to reach.  *Id.*
However, she found "[t]he rest" of Drucker's opinion to be
"unpersuasive as . . . an overestimate of the severity of
[Spellman's] restrictions and limitations."  *Id.* at 439.  She
provided three reasons for that rejection: (1) Drucker "relied
quite heavily" on Spellman's subjective reports of symptoms and
limitations; (2) Drucker's opinion was inconsistent with his own
treatment records; and (3) the record contained "no objective

indication" that Spellman "had an antalgic gait" or "difficulty walking." *Id.*[5]

The ALJ's analysis was insufficient for two reasons. First, the ALJ did not identify with specificity the portion of Drucker's opinion that she rejected; rather, she merely referred to it as "[t]he rest" of the opinion. An ALJ is permitted to credit only a portion of a treating physician's opinion and reject another portion, provided that determination is supported by substantial evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). But the ALJ must identify which portions she credits or rejects, because ambiguity on this subject renders unclear the ALJ's "reasoning and adherence to" the treating physician rule. *Atwater*, 512 F. App'x at 70; *see Veino*, 312 F.3d at 588 (affirming the ALJ's partial crediting of a treating physician opinion where the ALJ specified which parts she credited). As the Supreme Court has emphasized, "[i]t will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive." *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947).

---

[5] An "antalgic gait" is defined as "a characteristic gait resulting from pain on weight-bearing in which the stance phase of gait is shortened on the affected side." *Antalgic Gait*, *Stedman's Medical Dictionary*, Westlaw (Nov. 2014 Update).

Second, the ALJ also did not specifically identify what other record evidence contradicted Drucker's opinion. Rather, the ALJ stated, in fairly conclusory fashion, that the limitations Drucker identified were "inconsistent with [his] own treatment records," which demonstrated "considerable" but not "extreme" impairments.  Tr. 439.  The ALJ did not, however, provide a reasoned explanation for this rejection.  And as noted, because the ALJ did not identify with specificity which parts of Drucker's opinion she rejected, this Court cannot determine which pieces of evidence the ALJ considered to be inconsistent with which asserted limitations.  As the Supreme Court has instructed, "[i]f [an] administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable." *Chenery Corp.*, 332 U.S. at 196.  Given the agency's lack of clarity as to its basis for partially rejecting Drucker's asserted limitations, remand is warranted for the agency more fully to explain that rejection.

**B.   Spellman's Subjective Symptom Testimony**

Second, Spellman argues that the ALJ improperly discredited his subjective complaints of symptoms.  Pl. Mem. 20–22.  Had the ALJ adequately weighed such reports, Spellman contends, the ALJ would have had to conclude that he was disabled.  Instead, Spellman claims, the ALJ defaulted to the

conclusion that Spellman's testimony was "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Tr. 434.

Under appropriate circumstances, the subjective experience of pain or other symptoms can support a finding of disability.  "[W]hen determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  At the same time, "disability requires more than mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

The Social Security regulations "provide a two-step process for evaluating a claimant's assertions of pain and other limitations."  *Genier*, 606 F.3d at 49.  "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."  *Id.*  If the answer is yes, then "at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record."  *Id.*  In making this determination, the ALJ must consider any "statements the claimant . . . make[s] about his impairment(s), his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to

medical sources . . . or to the agency." *Id.* "[I]t is not sufficient for the ALJ to make a single, conclusory statement that the claimant is not credible or simply to recite the relevant factors," though "remand is not required where the evidence of record permits [the Court] to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013).

Here, Spellman stated that his pain medication's side effects include forgetfulness and fatigue that are sufficiently serious to prevent him from working. Tr. 182–86. As noted, the ALJ rejected these statements as "not entirely consistent" with the evidence in the record. *Id.* at 434. She did not clearly spell out any such inconsistencies, but instead juxtaposed Spellman's complaints with a review of the medical opinion evidence and treatment records. *Id.* at 434–39.

In doing so, however, the ALJ did not specifically analyze the consequences of Spellman's medication side effects. This omission is inconsistent with the agency's regulations. "When evaluating the intensity, persistence and limiting effects of symptoms, the Commissioner's regulations require consideration of seven specific, *objective* factors that naturally support or impugn *subjective* testimony of disabling pain and other symptoms." *Rucker v. Berryhill*, No. 16-CV-1388, 2018 WL 1320660, at *10 (E.D.N.Y. Mar. 14, 2018). Those factors

include "the type, dosage, effectiveness, and *side effects of medication* taken to alleviate pain or other symptoms." *Id.* at *11 (emphasis added).  But the ALJ here did not discuss Spellman's medication side effects and whether they might support Spellman's symptom testimony.  Remand is therefore necessary to address this issue, consistent with the agency's regulations.

The ALJ's analysis of Spellman's symptom testimony is problematic for two other reasons.  First, the ALJ did not adequately evaluate Spellman's credibility in light of his past work record.  "A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983); *see also Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) ("[A] good work history may be deemed probative of credibility . . . .  [A] consideration of work history must be undertaken with great care.").  The record shows that Spellman worked consistently between 1984 and 2010, with the exception of one year in 1995.  Tr. 147–49.  This factor should have weighed in favor of Spellman's credibility, and while it may or may not have been dispositive in that analysis, the ALJ's failure to consider it was error.

Second, the ALJ characterized Spellman as having "required minimal pain medication."  Tr. 439.  But the ALJ did

not explain how she arrived at that conclusion.  She only cites
a report from CVS Pharmacy showing that, as of December 2015,
Spellman had been regularly refilling his prescription pain
medication, gabapentin, every three months.  *Id.* at 345.  The
ALJ's decision does not explain why that prescription medication
is "minimal," and that lack of clarity further supports the need
for remand.  *See Chenery Corp.*, 332 U.S. at 196–97.

## C.   Vocational Expert's Testimony

Finally, Spellman argues that the ALJ failed to
identify and resolve an apparent conflict between the testimony
of the vocational expert ("VE") and the *Selected Characteristics
of Occupations* ("SCO").  Pl. Mem. 22–24.  The SCO is a
"companion publication" to the Dictionary of Occupational Titles
("DOT").  *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87,
90 n.2 (2d Cir. 2019).  Spellman asserts that the ALJ failed to
identify a conflict between, on the one hand, the VE's testimony
that he could perform the three selected jobs, and on the other
hand, the SCO's description of those jobs as requiring more
reaching than Spellman could perform.  He is correct.

As noted, the ALJ determined that Spellman could
perform the jobs of telephone quotation clerk, call-out
operator, and charge-account clerk.  Tr. 440–41.  The ALJ made
this determination on the basis of the VE's testimony at
Spellman's 2019 hearing, as well as post-hearing interrogatories

that the VE answered.  *Id.*  The parties agree that the SCO defines each of those jobs as requiring at least "occasional" reaching.  Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Mem.") 24, ECF No. 13-1; Pl. Reply 4, ECF No. 15.[6]

At the same time, the ALJ determined that while Spellman could "frequently reach," he "can never reach overhead . . . with the right upper extremity."  Tr. 433.  This determination conflicts with the VE's testimony that Spellman could perform the three jobs he identified because the SCO defines "reaching" as "extending arms in any direction."  Appendix C, *Selected Characteristics of Occupations*; *see* SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985).  Therefore, to be able to perform a job that involves "occasional" reaching, the claimant must also be able to "occasionally" reach overhead.  *See Roberto v. Saul*, No. 20-CV-1923, 2021 WL 3912298, at *6 (E.D.N.Y. Sept. 1, 2021); *cf. Lockwood*, 914 F.3d at 92 ("'[R]eaching' includes overhead reaching.").  The ALJ did not explain why Spellman, who could "never" reach overhead with his right arm, can perform a job requiring "occasional" overhead reaching.

---

[6] *See 237.367-014 Call-Out Operator*, 1991 WL 672186 ("occasional[]" reaching); *237.367-046 Telephone Quotation Clerk*, 1991 WL 672194 ("frequent[]" reaching); *205.367-014 Charge-Account Clerk*, 1991 WL 671715 ("frequent[]" reaching).

The failure to identify and resolve this conflict forms an additional basis for remand.  Under the Social Security Administration's regulations, an ALJ must "inquire as to whether vocational expert testimony conflicts with the SCO . . . before relying on such testimony." *Robinson v. Astrue*, No. 8-CV-4747, 2009 WL 4722256, at *2 (E.D.N.Y. Dec. 9, 2009) (citing SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000)).  And "[w]hen there is an apparent unresolved conflict between vocational expert evidence and the . . . SCO, the adjudicator must elicit a reasonable explanation for the conflict before relying on the vocational expert evidence to support a determination or decision about whether the claimant is disabled." *Id.*  This inquiry must be made "on the record." *Id.*

Here, the ALJ did not identify the apparent conflict, instead citing only the DOT and stating that that publication "does not consider the limitation of overhead reach."  Tr. 441. But as noted, the ALJ must consider both the DOT and the SCO, and the latter *does* consider overhead reaching, placing that action within the scope of "reaching" more generally.  The ALJ thus failed to identify the "apparent conflict" between the SCO and the VE's testimony. *Lockwood*, 914 F.3d at 94.

The Commissioner defends the ALJ's decision on the basis that the ALJ obtained clarifying post-hearing interrogatories from the VE.  Def. Mem. 24-25.  In those

interrogatories, the ALJ asked the VE whether there were any conflicts between the VE's testimony that Spellman could perform the three identified jobs "and the occupational information contained in the DOT and/or the SCO, including the limitation of no overhead reach with the right upper extremity." Tr. 827. The VE checked "No" and wrote, "[t]hese are clerical positions without overhead reaching or push/pull required." *Id.* The VE further stated that her "answer is based on my experience & training as well as knowledge of unskilled clerical work requirements." *Id.*

An ALJ may choose to rely on interrogatories posed to a VE, in addition to or in lieu of live testimony at a hearing. *See Fields v. Saul*, No. 19-CV-1423, 2020 WL 3041489, at *20 (S.D.N.Y. June 8, 2020), *R & R adopted sub nom. Fields v. Comm'r of Soc. Sec.*, No. 19-CV-1423, 2020 WL 3546912 (S.D.N.Y. June 30, 2020). But the VE's response to the interrogatories are also in conflict with the SCO, and the ALJ failed to explicitly identify that conflict. *See Lockwood*, 914 F.3d at 94.

To be clear, such a conflict does not necessarily have to be resolved in the claimant's favor. The DOT and SCO describe occupations as they are "generally performed," while an expert may elucidate the specific "requirements of particular jobs." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003). Nevertheless, the ALJ must "'obtain a reasonable explanation'

for any 'apparent' – even if non-obvious – conflict between the Dictionary and a vocational expert's testimony."  Lockwood, 914 F.3d at 92 (quoting SSR 00-4p, 2000 WL 1898704, at *2).  It may be that, upon remand, the ALJ decides to credit the VE's testimony — that these specific jobs do not require overhead reaching — over the SCO's more general description.  On this record, however, remand is required because the ALJ failed to identify the apparent conflict between the SCO and the VE's testimony.

I also note that the Commissioner does not attempt to defend the ALJ's decision on the basis that the ALJ determined Spellman could "frequently" reach overhead with his left arm. But even if the Commissioner raised this argument, it would be unavailing because the "assumption that the [identified jobs] do[] not require the use of both hands is found nowhere in the record."  Robinson, 2009 WL 4722256, at *2 n.6.  Moreover, such an argument "is not supported by the Commissioner's policy guidelines," which state that "'most unskilled sedentary jobs require the use of both hands.'"  Id. (quoting SSR 96-9p, 1996 WL 374185, at *2 (July 2, 1996)).

Because the ALJ failed to explicitly identify an apparent conflict between the VE's testimony and the SCO, remand is required.[7]

## D.   Request to Remand for Calculation of Benefits

Where the ALJ's decision is deficient, "reversal and remand for further proceedings is the usual remedy." *Robert M. v. Kijakazi*, No. 20-CV-1388, 2021 WL 4150087, at *4 (W.D.N.Y. Sept. 13, 2021).  Spellman, however, argues that his matter should be remanded to the agency solely for a calculation of benefits.  Pl. Mem. 24-25.  Such a remedy is appropriate "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  It can also be warranted where "an ALJ violates the treating physician rule, and where adherence to the rule would have clearly resulted in a determination that the claimant was disabled." *Ben v.*

---

[7] I note that the Social Security Administration's continued reliance on the "telephone quotation operator" job in ALJ proceedings has been rightfully criticized. *See Feeley v. Comm'r of Soc. Sec.*, No. 14-CV-4970, 2015 WL 3505512, at *10 (D.N.J. June 3, 2015) ("The notion of an investor calling his brokerage house on the telephone to have a stock quotation read to him by a receptionist who monitors an 'electronic quote board' does seem rather quaint.  . . .  [T]he Vocational Expert's testimony that in 2012 there were approximately 970,000 telephone quotation clerk jobs available nationally, and 95,000 available regionally, seems dubious.).  The issue is reflective of the age of the DOT.  *See* Lisa Rein, *Social Security Denies Disability Benefits Based on List with Jobs from 1977*, Washington Post (Dec. 27, 2022, 10:15 A.M.), https://www.washingtonpost.com/politics/2022/12/27/social-security-job-titles-disabled-applicants-obsolete/.  On remand, the ALJ should consider with care whether such jobs still exist in sufficient numbers in the national economy.

*Berryhill*, No. 17-CV-8345, 2019 WL 1447892, at *14 (S.D.N.Y. Mar. 19, 2019).

Here, I am not convinced that further administrative proceedings would serve no purpose.  The bases for reversal amount to the ALJ's failure adequately to explain the reasoning for her decisions — to credit only part of Drucker's testimony and to discount Spellman's symptom testimony — and to identify a conflict in the RFC and occupation evidence.  The agency should be given the opportunity to provide an adequate explanation on each issue in the first instance.  As the Second Circuit has stated, where the Court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," it "would not hesitate to remand the case for further findings or a clearer explanation for the decision."  *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982).

Nevertheless, given "the lengthy history of this matter and the ALJ's clear errors," and "to minimize the additional delay that this second remand will necessarily occasion, the Court is setting time limits for further agency action," as set forth below.  *Ben*, 2019 WL 1447892, at *1.

## IV.  Conclusion

For these reasons, I deny the Commissioner's motion for judgment on the pleadings and grant Spellman's motion to the

extent it seeks reversal of the Commissioner's final decision. Spellman's motion is denied, however, to the extent it seeks a finding of disability and a remand for the sole purpose of calculating benefits.

The ALJ's decision is vacated, and the matter is remanded to the Commissioner for further proceedings not inconsistent with this Order.  Upon remand, the ALJ shall be directed to take appropriate steps to ensure that, absent a request by Spellman for any extension or adjournment, the ALJ's revised decision is issued within 90 days of this Order.  Any administrative appeal shall be completed within 60 days of the filing of the appeal with the Appeals Council.  If these deadlines are not met, then Spellman shall be entitled to a calculation of benefits for the period of his claimed disability.

SO ORDERED.

_/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge

Dated:    September 19, 2023
          Brooklyn, New York